**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

MYRAN D. McKNIGHT, SR., )
)
Petitioner, )
)
v. ) CAUSE NO.: 3:11-CV-19-TLS
)
SUPERINTENDENT, MIAMI )
CORRECTIONAL FACILITY, )
)
Respondent. )

**OPINION AND ORDER**

Myran McKnight, a prisoner confined at the Miami Correctional Facility, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in the Elkhart Superior Court for dealing in cocaine, conspiracy to deliver cocaine, and for being adjudicated as a habitual offender, for which he is serving a twenty-five year sentence. The Indiana Court of Appeals affirmed the Petitioner's convictions on July 29, 2009, and the Indiana Supreme Court denied transfer on January 7, 2010. (*See* Appellate Case History, ECF No. 11-2 at 3–4.) The Petitioner did not seek post-conviction relief.

In reviewing a petition for federal collateral relief from a state court judgment of conviction, this Court must presume as correct the facts as found by the state courts. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ruvalcaba v. Chandler*, 416 F.3d 555, 559–60 (7th Cir. 2005). Moreover, the Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Ruvalcaba*, 416 F.3d at 559–60.

**BACKGROUND**

As stated by the Indiana Court of Appeals on direct appeal, the facts in the Petitioner's case are as follows:

> On May 9, 2007, McKnight called confidential informant CS–06–038 ("the informant") and asked him if he wanted to buy crack cocaine. The informant agreed to purchase seven grams of crack cocaine for $200.00. The informant later met with an undercover officer ("UC 120") and traveled to a home in Elkhart, Indiana. When they arrived, McKnight told them that only the informant could enter the house. The informant went into the house with McKnight and purchased $200.00 worth of crack cocaine using money that had been supplied by police officers. McKnight gave the informant a bag containing .827 grams of crack cocaine, far less than the seven grams the informant agreed to purchase.
>
> On May 22, 2007, the informant spoke with McKnight and agreed to purchase more crack cocaine from him. The informant again picked up UC 120. They drove to a house on Main Street and McKnight appeared from the residence. UC 120 asked if McKnight was "going to rip [him] off again" and McKnight said "no." UC 120 asked what he would get for $50.00 and McKnight said "you will get that," as he pointed to the $50.00. After taking the $50.00, McKnight went back into the residence. He returned to tell UC 120 that his associates would not "bring the s*** here" and walked away with the $50.00.
>
> On May 30, 2007, the State charged McKnight with two counts of dealing in cocaine, each as class B felonies. On June 6, 2007, attorney James D. Stevens entered his appearance on behalf of McKnight. In August 2007, the State amended its information to include an habitual substance offender allegation and to clarify that Count II involved a conspiracy to deal in cocaine. On August 23, 2007, the parties appeared before the trial court and a jury trial was set for February 4, 2008.
>
> On August 28, 2007, and November 5, 2007, McKnight submitted handwritten requests for a speedy trial, but because he was represented by counsel, the trial court did not accept the motions. The trial court did send a copy of McKnight's requests to his counsel. On November 8, 2007, McKnight's attorney, Mr. Stevens, withdrew as McKnight's counsel.
>
> On January 23, 2008, the State moved to continue the trial due to court congestion. Finding that an older case was scheduled for the same date, the trial court granted the motion for a continuance, found that the delay was not attributable to the State, and reset the case for a pre-trial conference.
>
> On February 6, 2008, McKnight filed a motion for discharge pursuant to Criminal Rule 4(B). After conducting a hearing, the trial court denied McKnight's motion. During the hearing, the trial court offered McKnight a first choice trial setting in July

> 2008, but he declined the offer. The trial was set for April 21, 2008, but there were twelve other cases also set for trial on that date.
>
> On April 7, 2008, the State asked the trial court to continue the April 21st trial date due to court congestion. Finding the calendar congested, the trial court granted the motion for a continuance, found the delay was not attributable to the State, and reset the case for a pre-trial conference.
>
> On May 20, 2008, McKnight filed a "Motion to Object to Belated Trial and Lack of Trial Setting." A hearing on that motion was held on May 29, 2008, and a trial was set for July 21, 2008. McKnight then filed a motion for discharge pursuant to Indiana Criminal Rule 4(C) on June 5, 2008. On July 17, 2008, the trial court allowed the State to delay response to this motion until after the trial.

(Mem. Decision 2–4, ECF No. 11-5 (internal record citations omitted).)

## ANALYSIS

### I. Petitioner's Motion Requesting the Respondent to Produce to the Court the Full and Complete State Court Record

This Court ordered the Respondent to respond to the Petition for Writ of Habeas Corpus, and to "submit the Petitioner's full and complete state court record or advise the Court why the complete state court record is not necessary." (Order to Show Cause, ECF No. 7.) The Respondent submitted portions of the Petitioner's state court Record as attachments to his Return to Order to Show Cause. (*See* Return to Order to Show Cause, ECF No. 11, & Exs. A–G.)

The Petitioner filed a Motion Requesting the Respondent to Produce to the Court the Full and Complete Record as Ordered [ECF No. 18]. But in addition to the portions of the state court record attached to the Return to Order to Show Cause, the Respondent also submitted separately the complete state court record of the Petitioner's state court proceedings. (ECF No. 14.) Because the Respondent has already submitted the entire state court record as ordered, the Court will deny the Petitioner's request that the Court order the Respondent to produce the full and

complete state court record.[1]

## II. The Petitioner's Sixth Amendment Speedy Trial Claim

In ground one of his Petition, the Petitioner asserts that the trial court violated his Sixth Amendment right to a speedy trial. (Petition 6, ECF No. 1.) The Respondent argues that the Petitioner procedurally defaulted this claim because he did not exhaust his state court remedies by presenting it to the state courts in his direct appeal.

Title 28 U.S.C. § 2254(b)(1)(A) provides that a state prisoner's application for a writ of habeas corpus shall not be granted unless "the applicant has exhausted the remedies available in the courts of the State." Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

To fully exhaust his state court remedies, a habeas petitioner must seek discretionary review from the State's highest court where that review is normal, simple, and an established part of the State's appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–47 (1999). Failure to exhaust available state court remedies constitutes a procedural default. To avoid a procedural default, a petitioner must have presented his federal claims to the state courts before he seeks federal review of these claims. *Id.* at 844. It is the petitioner's burden to prove exhaustion. *Baldwin v. Lewis*, 442 F.2d 29, 35 (7th Cir. 1971).

The Exhaustion Doctrine requires that a habeas petitioner "fairly present" his federal

---

[1]The Petitioner specifically requests submission of the Indiana Supreme Court's Order denying the Petition to Transfer, but the language he references is already included in the Appellate Case History, ECF No. 11-2 at 4.

claims to the state courts before submitting them to the federal courts. *Verdin v. O'Leary*, 972 F.2d 1467, 1472–73 (7th Cir. 1992). Fair presentation requires that "both the operative facts and the controlling legal principles must be submitted" to the state courts, and failure to present both restricts the issues that a federal court may consider during collateral review. *Id.* at 1474 (quotation marks omitted).

In his state court appellate brief, the Petitioner frames the issue presented to the Indiana Court of Appeals as follows: "This Appellant is entitled to discharge pursuant to Criminal Rule 4(C)." (Br. of the Appellant 6, ECF No. 11-3.) The Petitioner does not even mention the Sixth Amendment in this portion of his appellate brief. All of the arguments the Petitioner presented to the Indiana Court of Appeals refer to Indiana Rule of Criminal Procedure 4(C), and all of the cases cited by him in this portion of his appellate brief are Indiana cases interpreting Rule 4(C). Similarly, in his Petition to Transfer, the Petitioner only raised Rule 4(C) arguments and did not raise a Sixth Amendment speedy trial claim.

In his Traverse, the Petitioner points to several portions of the state court record where he asserts that he presented a Sixth Amendment speedy trial claim to the trial court. (Mem. in Supp. of Pet'r's Traverse 3, ECF No. 17-1.) But the exhaustion doctrine requires that a habeas applicant present his Constitutional claims to the state's appellate courts, *O'Sullivan*, 526 U.S. at 847, and the state court record establishes that the Petitioner did not do this.

The Petitioner also argues in his Traverse that "[t]he Indiana Appellate Court reached the merits of this Petitioner's Sixth Amendment speedy trial claim in a written decision that rest[s] primarily on federal law and is interwoven with the Federal law in such a fashion that no procedural default can apply by way of an adequate and independent state law ground." (Mem.

in Supp. of Pet'r's Traverse 1.) That argument is completely without merit. The Indiana Court of Appeals did state in its opinion that "[t]he right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article 1, Section 12 of the Indiana Constitution." (Mem. Decision 5.) But then the court turned to Criminal Rule 4, and the rest of that portion of its order addresses the Petitioner's Criminal Rule 4 claim. Nothing in the Court of Appeals opinion suggests that the Court of Appeals considered a Sixth Amendment speedy trial claim. Nor did the Petitioner present a Sixth Amendment claim to the Indiana Supreme Court. Because the Petitioner did not present to the Indiana Supreme Court the facts and arguments he advances in his habeas Petition regarding the Constitution's Sixth Amendment he has not exhausted those claims, and they are procedurally defaulted.

A habeas petitioner can overcome a procedural default, including failure to exhaust, by showing both cause for his failure and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). The Petitioner does not present any argument that would establish cause for his failure to exhaust his state court remedies on his Sixth Amendment speedy trial claim.

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). Under this narrow exception, a habeas applicant must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 324 (1995) (quoting *Carrier*, 477 U.S. at 496).

A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's." *Buie v. McAdory*, 341 F.3d 623, 626–27 (7th Cir. 2003). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).The Petitioner has not presented a fundamental miscarriage of justice argument. His argument that he should have been discharged because the State of Indiana delayed his prosecution beyond the time limits established by state law does not suggest that he is actually innocent of the charges against him.

Because the Petitioner's Sixth Amendment speedy trial argument is procedurally defaulted, the Court will deny this claim for habeas relief.

## III. Alleged Exclusion of Evidence During Cross Examination

In ground two of his Petition, the Petitioner asserts that he "was denied a fair trial . . . by improper limitation of cross examination." (Petition 6.) He specifically asserts that the trial court prohibited him from utilizing evidence of racial bias when cross-examining the State's witnesses, thereby violating his Sixth Amendment right to confrontation. (Mem. in Supp. of Section 2254 Pet. 30, ECF No. 1-1.) The Respondent argues that the evidence of alleged racial bias was in fact presented to the jury by the State, and the Petitioner had opportunity to cross-examine on this point. The Respondent argues, further, that the Indiana Court of Appeals correctly applied federal law in denying the Petitioner's claim on this issue.

The Constitution's Sixth Amendment provides that a criminal defendant has the right "to be confronted with the witnesses against him [or her]," which includes not only the right to physically confront a witness but also "*the opportunity of cross-examination*." *Delaware v. Van*

*Arsdall*, 475 U.S. 673, 678–79 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)). Exposing a witness's motivation in testifying is an "important function" of cross-examination. *Id.* at 679 (quoting *Davis*, 415 U.S. at 316–17). However, an opponent's cross-examination to expose potential bias is not limitless and trial courts "retain wide latitude" to impose "reasonable limits" on cross-examination inquiries. *Id.* Trial courts may limit the inquiry based upon concerns of "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* A defendant is not entitled to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

In reviewing the Petitioner's appeal of his conviction, the Indiana Court of Appeals properly identified the *Delaware v. VanArsdall* standard as governing the resolution of his confrontation and cross-examination claim. (*See* Mem. Decision 15–16.) Accordingly, this Court must determine whether its application of *VanArsdall* was unreasonable. In regard to the Petitioner's confrontation claim, the Indiana Court of Appeals concluded that:

> The subject of racial bias was not relevant to the cocaine charges, had a great chance of prejudicing the jury about the case, and a significant chance of confusing the issues for the jury. We cannot say that the trial court abused its discretion in barring discussion of racial bias. Because the court's limitation of McKnight's cross examination was reasonable, his due process claim fails. *See, e.g., Jenkins* [*v. State*], 729 N.E.2d [147,] 149 [(Ind. 2000)] (holding that marginally relevant evidence may be excluded when its probative value is outweighed by possibility of prejudice or confusion).

(*Id.* 16.)

A federal court may grant habeas relief if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); 28 U.S.C. § 2254(d) (stating

that a § 2254 petition should be granted if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). But here the Indiana Court of Appeals reviewed the Petitioner's claims under the proper standard, reasonably applied that standard to his confrontation and cross-examination claim, and rejected that claim. This was not a situation where the Petitioner was denied the opportunity to engage in "otherwise appropriate" cross examination. *VanArsdall*, 475 U.S. at 680. Rather, as the Indiana Court of Appeals noted, the purported racial bias of the informant was irrelevant to the cocaine charges and posed a significant danger of confusing the issues. Because the Indiana Court of Appeals reasonably applied *Delaware v. VanArsdall* to the Petitioner's claim and found it to be unsubstantiated, his claim is without merit on habeas review pursuant to 28 U.S.C. § 2254(d). Accordingly, the Court will deny this claim.[2]

The Court notes that it appears from the trial transcript that the Petitioner would have been allowed to raise the racial bias of any witness if he had laid an appropriate foundation. The trial court granted a motion to exclude evidence of the Petitioner's perception of racial bias, not evidence of the actual racial bias of the informant or any other witness. (*See* Trial Tr. vol. 1, 12, July 21, 2008.) The trial judge specifically informed the Petitioner that nothing about his ruling

---

[2]The Petitioner additionally urges that Judge James T. Moody's Opinion and Order of October 29, 2008, dismissing the Petitioner's 42 U.S.C. § 1983 claim, should operate to prove his argument under the doctrine of collateral estoppel. In the 2008 Opinion and Order, Judge Moody stated that "the racial motivation of an informant is a relevant basis for challenging the veracity of the information or testimony provided by that informant." (Opinion & Order, ECF No. 1-2 at 28.) The Court finds Judge Moody's general statement of the principle that racial bias may be used as an avenue for cross examination irrelevant to the question of whether the trial court correctly limited the Petitioner's cross examination. The Indiana Court of Appeals found that the trial court did not abuse its discretion, and this Court finds that the Indiana Court of Appeals reasonably applied the *Delaware v. VanArsdall* standard.

would prohibit the Petitioner from asking questions about the racial bias of witnesses, or making arguments about racial bias. (*Id.*) The Court agrees with the Respondent that at trial it was the Petitioner's failure to lay an appropriate foundation for the evidence of racial bias on which he wanted to cross examine State witnesses that resulted in its exclusion during the Petitioner's cross examination of UC 120, not a blanket ruling excluding such evidence by the trial court. Furthermore, the evidence in question was actually admitted and played for the jury by the State during its direct examination of the informant. Once the evidence had been admitted, the Petitioner did not attempt to cross examine on the topic of racial bias. It is unclear why the Petitioner did not attempt to use this avenue for cross examination, but he was not foreclosed from doing so. In any case, because the Court of Appeals correctly applied the relevant Supreme Court precedent, the Court finds that any limitations actually placed on the Petitioner's ability to cross examine do not merit habeas relief.[3]

## IV. Alleged Withholding of Exculpatory Material

In ground three of his Petition, the Petitioner asserts that "[t]he State barred exculpatory evidence." (Petition 7.) In his attached memorandum, the Petitioner states that he filed a motion to compel the disclosure of "who prepared a specific Surveillance Activity Report," but that "the State answered that the State did not know who prepared the Surveillance Report." (Mem. in Supp. of Section 2254 Pet. 40–41.) The Petitioner claims the State's failure to provide him the

---

[3]The Petitioner argues he was foreclosed from cross examining the informant about his use of a racial expletive while testifying in court. The trial judge examined the record and found that the informant did not actually utter the expletive in court. (Trial Tr. vol. 2, 187, 189, July 22, 2008.) In light of that finding, the Court finds that the trial judge's decision to silence the Petitioner on this point comports with the standards set forth in *Delaware v. VanArsdall*.

name of the person who prepared the Surveillance Activity Report amounted to withholding of exculpatory material in violation of the Fourteenth Amendment's due process clause.

The Respondent argues that this claim is procedurally defaulted because the Petitioner did not present it to the Indiana appellate courts. The Petitioner responds that he attempted to present this claim to the Indiana Court of Appeals, but that court did not address it and argues that where a state appellate court fails to address a federal claim or misconstrues it, then the exhaustion doctrine is satisfied.

Neither the Petitioner's state Appellate Brief nor his Petition to Transfer list withholding of exculpatory evidence in violation of Fourteenth Amendment due process as an issue raised to the state courts. (Br. of the Appellant 3; Pet. to Transfer 2–3, ECF No. 11-7.) In his Appellate Brief's statement of the facts, the Petitioner stated that he filed a motion to compel the disclosure of the name of the person who prepared the Surveillance Activity Report for the May 9, 2008, controlled buy, but that the State responded that it did not know who authored that report. (Br. of the Appellant 2.) Additionally, he mentions the Surveillance Activity Report and the withholding of exculpatory evidence as part of his argument that the State presented insufficient evidence to support his conviction on Count I. (*Id.* 5.) He also mentions the Surveillance Activity Report as part of his claim that the prosecution offered false testimony. (*Id.*) But nowhere in his brief does the Petitioner make a legal argument that the prosecutor's inability to provide the name of the person who prepared the Surveillance Activity Report violated the Fourteenth Amendment. Nor did he present such an argument to the Indiana Supreme Court.

Because he did not present a claim that the State withheld exculpatory evidence in violation of the Fourteenth Amendment to either the Indiana Court of Appeals or the Indiana Supreme Court, the Petitioner procedurally defaulted this claim. The Petitioner does not assert

cause for his failure to present this issue to the state appellate courts. However, in his Traverse the Petitioner asserts that he is actually innocent, and that if he “can get the federal court to reach the merits of the Surveillance Activity Report a miscarriage of justice will rise.” (Mem. in Supp. of Pet’rs’ Traverse 16.) But nothing in the record suggests that there has been an actual miscarriage of justice, or that this Court would be justified in granting his habeas petition and setting aside his conviction. Therefore, the Petitioner’s fundamental miscarriage of justice argument does not overcome his procedural default.

Even were the Court to reach the merits of this Fourteenth Amendment due process claim, the Petitioner’s arguments are unavailing. The record establishes that the State provided the Surveillance Activity Report itself to the Petitioner before trial, so the evidence was available to the Petitioner. To support a Fourteenth Amendment claim that the prosecution withheld exculpatory evidence by withholding the name of the person who authored that report, the Petitioner would have to establish that the prosecution actually knew who prepared the report yet did not reveal the name, and also that knowing the name of the author of the report would have assisted him in defending against the criminal charges against him. But the Petitioner does not point to any portion of the record that would suggest, let alone establish, that the prosecutor knew who prepared the report and intentionally withheld that information from the Petitioner. Neither is the Court persuaded by the Petitioner’s arguments that knowing the identify of the official who prepared the Surveillance Activity Report would have assisted the Petitioner in avoiding a conviction. At trial, the State admitted audio recordings of the actual drug buys. The Surveillance Activity Report was a summary of those drug buys, and thus cumulative evidence. The trial court denied the Petitioner’s attempts to admit the Surveillance Activity Report itself because he had failed to authenticate it, and the State’s failure to produce evidence that it did not possess—in this case the identity of the report’s author—did not amount to withholding

exculpatory evidence.

## V. Alleged False Testimony Condoned by the Prosecutor

In ground four of his Petition, the Petitioner asserts that "(f)alse testimony was used against this Petitioner at the state trial." (Petition 7.) In his Memorandum in Support, the Petitioner states that the informant testified at trial that he gave the buy money directly to the Petitioner, although at the time of the buy he said he gave the money to an "unidentified black male," and that the informant also lied when he "denied in testimony that he offered to give this Petitioner drugs." (Mem. in Supp. of Section 2254 Pet. 45–46.)

The State may not knowingly use false testimony against a criminal defendant, and must correct testimony it knows to be false. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150, 153–54 (1972). The Seventh Circuit will order a new trial because of "false testimony only if (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is any likelihood that the false testimony could have affected the judgment of the jury." *United States v. Thornton*, 197 F.3d 241, 250 (7th Cir. 1999). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quotation marks omitted).

On direct appeal, the Indiana Court of Appeals rejected the claim that the prosecutor knowingly elicited false testimony, stating that:

> Here, McKnight alleges that the prosecutor knew the informant did not give McKnight the buy money, but still allowed the informant to testify that he gave McKnight the buy money directly. However, McKnight at most offers evidence that the informant offered contradictory or inconsistent testimony about whether he gave

> the buy money to McKnight directly or to an unidentified older man. McKnight presented no evidence that (1) the prosecutor knew the informant's testimony at trial was false or (2) that the informant's testimony was false. Because McKnight fails to present evidence that the prosecutor knew the informant was lying, we cannot say that the prosecutor committed prosecutorial misconduct.

(Mem. Decision 14.)

In *Napue v. Illinois*, a prosecutor failed to correct a response he elicited from a witness. The witness testified that he had received no promise or consideration in return for his testimony, when in fact the witness had been promised consideration by that prosecutor. *Napue*, 360 U.S. at 265. But here, as the Indiana Court of Appeals noted, the Petitioner failed to point to any express evidence that the State knew the confidential informant was lying on the stand. The Indiana Court of Appeals reasonably adjudicated this claim, and the Petitioner has not established that its disposition of this claim was contrary to *Napue*, or other applicable United States Supreme Court authority. Because the Petitioner has failed to show that the prosecutor knowingly suborned perjury, the Court will deny this claim for habeas relief.

The Petitioner also argues that the record demonstrates that the confidential informant was lying when he denied offering drugs to the Petitioner. In its review of this claim, the Indiana Court of Appeals held that:

> McKnight also claims that the informant perjured himself by denying that the informant offered McKnight drugs. McKnight does not develop this argument and simply makes the conclusory statement that "it is shown that informant's perjury at trial was material to this cause, verdict, and the credibility of this witness." Appellant's Brief at 29. Because McKnight does not develop a cogent argument, this issue is waived. *See, e.g.*, *Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v. State*, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that defendant waived argument on appeal by failing to develop a cogent argument).

(Mem. Decision 14 n.6.)

A "valid state procedural rule," such as waiver, "constitutes an 'adequate and independent state ground' for resolving an issue, precluding" collateral review. *Wrinkles*, 537 F.3d at 811 (quoting *Wainwright*, 433 U.S. at 81). Additionally, the Petitioner has not shown cause for his procedural default, nor does he present a valid argument that the failure to consider these claims will result in a fundamental miscarriage of justice. Accordingly, this claim for habeas relief is procedurally defaulted and will be denied.

## VI. Alleged Inaccuracies in the Trial Transcript

As ground five of his Petition, the Petitioner asserts, as fundamental error, that "[t]he transcripts of the State Appeal were not a fair representation" of the record. (Petition 2.) In his Memorandum in Support, he asserts that "the right to a fair and complete appeal has been denied by the trial court's act of not recording a section of the criminal trial." (Mem. in Supp. of Section 2254 Pet. 56.) The Petitioner argues that during the cross-examination of the informant, the tape machine was stopped and played back, that arguments made to the court by the Petitioner and the prosecutor during the time the tape was stopped were not recorded, and that he "is certain the re-recording of the trial did not start at the correct position on the tape." (*Id.* 57.)

The Respondent argues that the Petitioner did not raise this issue in his Petition to Transfer, and that he is procedurally barred from raising this claim. The Petitioner's state court Appellate Brief establishes that he did argue on appeal that the transcript was incomplete and deficient. (Br. of the Appellant, ECF No. 11-3 at 35–37.) But the record also establishes that he did not present this issue to the Indiana Supreme Court in his Petition to Transfer. (*See* Pet. to Transfer.)

A habeas petitioner may not resort to federal court without first giving the state courts a full and fair opportunity to address his federal claims and to correct any error of constitutional magnitude, *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001), and to exhaust his state court remedies, a habeas petitioner must have presented his claims to the state's highest court. *O'Sullivan*, 526 U.S. at 845. Because the Petitioner did not include his claim regarding the accuracy of the transcript in his Petition to Transfer, he has procedurally defaulted the claim, and he does not show cause for the procedural default or that the failure to consider that claim will result in a fundamental miscarriage of justice. Accordingly, habeas review is precluded on this claim.

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must consider whether to grant the Petitioner a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted).

When the court dismisses a petition on procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Id.* at 484–85. First, a certificate of appealability should be issued "when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Id.* at 484. Second, the petitioner must also show "that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." *Id.* To obtain a certificate of appealability, the petitioner must satisfy both components. *Id.* at 485.

For the reasons stated in this Opinion and Order, the Court concludes that the Petitioner is not entitled to relief because his claims are either barred by the doctrine of procedural default because he did not exhaust his state court remedies or because they are substantively without merit. The Petitioner has not established that jurists of reason could debate the correctness of these rulings or find a reason to encourage him to proceed further. Accordingly, the Court declines to issue him a certificate of appealability.

**CONCLUSION**

For the foregoing reasons, the court DENIES the Petitioner's Motion Requesting the Respondent to Produce to the Court the Full and Complete Record as Ordered [ECF No. 18]. Further, the Court DENIES the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1], DENIES the Petitioner a certificate of appealability, and DIRECTS the Clerk to close this case.

SO ORDERED on July 9, 2012.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION